Mark R. Ruppert
Joanna R. Vilos
Tyler J. Garrett
HOLLAND & HART LLP
2515 Warren Avenue, Suite 450
P.O. Box 1347
Cheyenne, WY 82003-1347
Telephone: (307) 778-4200
Facsimile: (307) 778-8175

Shane P. Coleman
HOLLAND & HART LLP
401 North 31st Street, Suite 1500
Billings, MT 59101
Telephone: (406) 252-2166
Facsimile: (406) 252-1669

ATTORNEYS FOR DEFENDANTS

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| PRESTON, YALE ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 08CV 239J |
| ) | |
| MARATHON OIL CO., A TEXAS ) | |
| CORPORATION AND ITS PARENT AND ) | |
| SUBSIDIARIES; SMITH, THOMAS, A ) | |
| RESIDENT OF COLORADO; AND JOHN ) | |
| DOES | |
| 1-10. ) | |
| ) | |
| Defendants. ) | |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT REGARDING JOINT INVENTORSHIP AND OWNERSHIP OF THE '385 PATENT**

## INTRODUCTION

Plaintiff Yale Preston's ("Preston") Claim II seeks declaratory judgment that Preston owns United States Patent No. 7,207,385 B2 Patent (the "'385 Patent"). This patent was filed by Marathon Oil Company ("Marathon") and names Defendant Thomas Smith ("Smith") and Preston as joint inventors. Smith is a petroleum engineer employed by Marathon, who worked with Preston to design and install the baffle system in Marathon's wells. Marathon is indisputably the assignee of Smith's interest in the '385 Patent. Among other matters, the '385 Patent includes claims directed to a surface baffle, which was installed in the Marathon wells and is not disclosed, much less claimed, by Preston in U.S. Patent No. 6,959,764 (the ("'764 Patent"). Smith indisputably contributed to the design and development of the surface baffle. He began that work while employed by Marathon, long before he ever met Preston. As a matter of law, Smith is a co-inventor based on his contribution to the surface baffle disclosed in the '385 patent alone. Smith's co-inventorship entitles Defendants to partial summary judgment on Count II that Marathon is at least a co-owner of the '385 Patent, as assignee. It also entitles Defendants to summary judgment on Count I's claim for infringement of the '385 Patent.

## STATEMENT OF FACTS

1. Preston was employed by Marathon from April 2001 to April 2003 as a pumper and Supervisory Control and Data Acquisition (SCADA) operator in Wyoming's Powder River Basin. (Preston I Dep. at 10-11, 18-20.)[1]

---

[1] Deposition of Yale Preston dated Aug. 27, 2008, referred to and attached as "Preston I Dep." Deposition of Yale Preston dated Sep. 28, 2009, referred to and attached as "Preston II Dep."

2. Preston claims to have conceived an invention he calls a "CH4 resonating manifold," before his employment by Marathon. (Preston I Dep. at 28, 35, 38, 50.) Preston claims that the CH4 resonating manifold included a triple-baffle system, which he disclosed in the '764 Patent. Preston claims to have created drawings of the CH4 resonating manifold prior to his employment, but he was unable to produce any such drawings during discovery. (Preston II Dep. at 14, 31.) Preston admitted that he did not take any action to reduce his alleged CH4 resonating manifold invention, or its baffle system components, to practice before being employed by Marathon. (Preston II Dep. at 65.)

3. During the course of his employment, Preston developed a baffle system to try to solve gas-locking problems in Marathon's coalbed methane wells. Preston worked with other Marathon employees on the baffle system, including Smith, who is a petroleum engineer. (Deposition of Thomas Brian Smith (Smith Dep.) at 6, 7.) Preston claims that the baffle system ultimately designed, manufactured, and installed by Marathon incorporates portions of his CH4 resonating manifold. Particularly, Preston claims that he is the sole inventor and owner of the baffle system claimed in the '764 Patent. (Preston I Dep. at 38, 49-53, 92-93, 97-99, 101-103.)

4. Preston used his on-call time around Christmas of 2002 to "prepare the idea and get it in some kind of cohesive, somewhat professional-looking credible form" before presenting the baffle system to the Marathon engineers for their approval. (Preston I Dep. at 94-95.)

5. Preston used a Marathon computer to create AutoCAD drawings of the baffle system. (Preston I Dep. at 98.)

6. After Preston presented the idea for the baffle system to several Marathon employees, "everybody agreed to let [Preston] build a couple and put it in a well." (Preston I Dep. at 94; see also *id.* at 95, 102.) By Preston's own admission, Smith performed engineering calculations for the design of the baffle plates, picked the wells in which the baffles were installed, and signed work orders for the baffle system. (*Id.* at 51, 101-102; Preston II Dep. at 193, 200; Smith Dep. at 131-132, 157.)

7. Preston had never built a prototype of the baffle system prior to working for Marathon, nor had he tested it.. (Preston I Dep. at 55, 57, 101.) Preston built and tested the baffle system for the first time while working for Marathon. (Preston I Dep. at 55-57, 93.)

8. Preston explained that he "used Marathon resources to build the baffle systems that they put in place." (Preston I Dep. at 98.) Preston built these specifically for Marathon's use. (*Id.* at 97-98.) Preston used Marathon supplies, facilities and equipment to manufacture it. (*Id.* at 182.)

9. Marathon provided Preston with the ability to find a contractor to cut the baffle plates to be used in the baffle system. (Preston I Dep. at 98-99.)

10. Preston used Marathon's established vendors to get the material needed for the baffle system and to install the baffle system in Marathon's wells. (Preston I Dep. at 99.)

11. Preston did not spend any of his own money developing the baffle system. Marathon paid all costs associated with the construction and testing. (Preston I Dep. at 99.) Marathon also paid Preston for the time he spent creating the baffle system while at work. (*Id.* at 95, 128, 169, 174.)

12. Preston consented to and participated in Marathon's use of the baffle system. (Preston I Dep. at 94, 100, 102.)

13. Preston never asked Marathon to stop using the baffle system until he filed this case. (Preston I Dep. at 170; Preston II Dep. at 53-54.)

14. In May 2003, shortly after his employment with Marathon ended, Preston applied for a patent on the baffle system. (Preston I Dep. at 140-41.) The application was filed June 5, 2003. ('764 Patent, Dep. Ex. 7, attached as Exhibit A.) In November 2005, the United States Patent and Trademark Office ("<u>USPTO</u>") allowed the application to issue as the '764 Patent. (*Id.*)

15. The baffle system that was actually installed in Marathon wells was of the type shown in color photos taken by Preston. (Photos, Dep. Ex. 201, attached as Exhibit B). This system was installed in 11 wells total. (Sigman Dep. at 52.) Marathon concluded that the baffle system produced no significant results, so Marathon removed it from the 11 wells when those wells were next serviced (e.g., for pump replacement). (Sigman Dep. at 54-55.)

16. All told, the baffle system was installed in and removed from the following wells on the following dates:

    1)    4-31-54-75A – Installed 4/11/03; removed 11/18/04

    2)    6-30-54-75A – Installed 2/24/03; removed 5/27/04

    3)    6-31-54-75CA – Installed 2/20/03; removed 10/5/04

    4)    8-31-54-75CA – Installed 4/15/03; removed 7/31/03

    5)    14-31-54-75A – Installed 4/15/03; removed 11/16/04

   6)  14-31-54-75CA – Installed 6/18/03; removed 3/16/06

   7)  15-27-56-75CO – Installed 7/11/03; removed 8/17/04

   8)  16-25-54-76CA – Installed 5/16/03; removed 12/5/03

   9)  16-30-54-75A – Installed 6/18/03; removed 5/16/06

   10)  16-31-54-75A – Installed 4/11/03; removed 12/5/03

   11)  16-31-54-75CA – Installed 1/31/03; removed 12/31/04

(Marathon's Supplemental Ans. to Pl.'s Interrog. No. 5, attached as Exhibit C.)

  17. On June 14, 2004, Marathon filed patent application no. 10/867,528 naming Smith and Preston as co-inventors. ('385 Patent, Dep. Ex. 6, attached as Exhibit D.) This application issued as the '385 Patent on April 24, 2007. *Id.*

  18. Marathon is the assignee of Smith's interest in the '385 Patent. (Notice of Recordation of Assignment Document, attached as Exhibit E.)

  19. Preston refused to cooperate with the filing or prosecution of the '385 Patent, so Marathon's patent counsel proceeded pursuant to 37 CFR § 1.47(a), which permits the filing of a patent application when a co-inventor refuses to cooperate. (Petition Under 37 CFR 1.47(a), attached as Exhibit F.)

  20. The '385 Patent includes 66 claims. The claims relate generally to a baffle system, but have a significantly different scope than the claims of the '764 Patent. *Compare* '385 Patent *with* '764 Patent. For example, the '385 Patent includes claims that are not limited to the triple-baffle arrangement of claim 1 of the '764 Patent. *Id.*

21. In addition to a downhole baffle system, the '385 Patent specification discloses a surface baffle. *See, e.g.*, '385 Patent, Fig. 2A, ref. # 44.  Claims of the '385 Patent expressly recite the surface baffle as an element, including claims 5, 12, 20, 21, 32, 37, 43, and 59, and the claims that depend therefrom.  (*See* '385 Patent, Exhibit D.)

22. The purpose of the surface baffle was to dehydrate gas produced through the annulus before it reached the surface gathering lines.  ('385 Patent, col. 7, ll. 7-20.)  Water in surface lines presents a problem, so Smith was in the process of designing a system to prevent or minimize the water from entering the gathering lines.  Years prior to his work on coalbed methane wells, Smith worked on unrelated technology that used baffle plates to polymers using technology similar to that disclosed in U.S. Patent No. 4,402,916, which was owned by Marathon.  Specifically, Smith became aware of perforated baffle type plates in 1985, when Smith worked at a Marathon polymer plant for enhanced oil recovery located in Lovell, Wyoming.  (Smith Dep. at 91-101.)  From this background, Smith sought to install a similar screen or baffle near the surface of a producing gas well.  (Smith Dep. at 35-41.)

23. In Fall of 2002, Smith initially thought to place the baffle type plate near the surface of the well.  (Smith Dep. at 41, 78.)

24. Smith discussed with Preston, Smith's idea of using a baffle plate near the surface of the well to keep water in the well bore.  (Smith Dep. at 37-44; Preston II Dep. at 135.)

25. One problem with the surface baffle was that it deflected water down hole.  Water traveling down the annulus would gather methane gas and carry that gas back toward the

formation. The triple-baffle arrangement installed downhole was designed in part to alleviate this problem created by the surface baffle. (Smith Dep. at 37-38.)

26. The surface baffle was installed in some of Marathon's 11 wells that had a baffle system. (Smith Dep. at 112-113, 120-124.) In some cases, the surface baffle was installed first, and the triple-baffle arrangement was installed downhole later. *Id.*

## DISCUSSION

### I. DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT AS TO OWNERSHIP OF THE '385 PATENT BECAUSE SMITH IS A JOINT INVENTOR.

#### A. Preston's Claims

Count II seeks declaratory judgment that Preston is the sole inventor and owner of the '385 Patent, which was filed by Marathon on a baffle system. The application listed Smith and Preston as co-inventors. '385 Patent. The scope of a patent's legal protection is determined by its claims. *See Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) ("It is a 'bedrock principle' of patent law that "the claims of a patent define the invention to which the patentee is entitled the right to exclude."). While both the '385 Patent and the '764 Patent claim a baffle system, their claims are considerably different in scope. For example, the claims of the '385 Patent do not require three baffle plates, two of which are configured with an "aperture grouping" as claimed by the '764 Patent. Additionally, the '385 Patent includes claims directed to a "surface baffle" that was a part of the original baffle system used in the Marathon wells, but which is nowhere mentioned in the '764 Patent.

Preston's blanket assertion that both patents cover the same thing ignores entirely the respective patents' claims and specifications, as well as the vast body of U.S. patent law. Properly analyzed, claims of the '385 patent include matters that Smith indisputably contributed. As a result, Smith is properly named as a co-inventor of the '385 patent. Marathon is the assignee of Smith's interest. Marathon is entitled to partial summary judgment under Count II that Marathon is at least a co-owner of the '385 Patent by virtue of Smith's co-inventorship. Marathon is further entitled to summary judgment as to Count I's claim of infringement of the '385 patent because a co-owner cannot infringe its own patent.

### B.   The Threshold for Co-Inventorship is Low.

Patent issuance creates a presumption that the named inventors are the true and only inventors. *Ethicon, Inc. v. U.S. Surgical Corp.*, 135 F.3d 1456 (Fed. Cir. 1998). "Because co-inventors need not make a contribution to the subject matter of every claim of the patent, 35 U.S.C. § 116, inventorship is determined on a claim-by-claim basis." *Trovan, Ltd. v. Sokymat SA, Irori,* 299 F.3d 1292, 1302 (Fed. Cir. 2002) (quotations omitted); s*ee also Ethicon*, 135 F.3d at 1460 (holding joint inventor need not make contributions to every claim of the patent; "contribution to one claim is enough").

Joint inventorship is governed by the Patent Act, and its threshold is low.

> Inventors may apply for a patent jointly even though (1) they did not physically work together or at the same time, (2) each did not make the same type or amount of contribution, or (3) each did not make a contribution to the subject matter of every claim of the patent.

9

35 U.S.C. § 116. In particular, this statute does not expressly set a "lower limit on the quantum or quality of inventive contribution required for a person to qualify as a joint inventor;" instead, joint inventorship is "simply the product of a collaboration between two or more persons working together to solve the problem addressed." *Fina Oil and Chem. Co. v. Ewen*, 123 F.3d 1466, 1473 (Fed. Cir. 1997); *see Ethicon, Inc. v. U.S. Surgical Corp.*, , 937 F. Supp. 1015, 1035-36 (D. Conn. 1996) (explaining that joint inventorship exists even if major share of inventive effort is accomplished by one joint inventor working alone prior to collaboration; if other contributes to final conception of invention, both are joint inventors, and that if person makes practical and concrete suggestion that contributes to invention, he or she is considered joint inventor). Simply put:

> All that is required of a joint inventor is that he or she (1) contribute in some significant manner to the conception or reduction to practice of the invention, (2) make a contribution to the claimed invention that is not insignificant in quality, when that contribution is measured against the dimension of the full invention, and (3) do more than merely explain to the real inventors well-known concepts and/or the current state of the art.

*Pannu v. Iolab Corp.*, 155 F.3d 1344, 1351 (Fed. Cir. 1998) (holding based on party's unrebutted testimony, a reasonable jury could find joint inventorship).

### C. Smith is Indisputably a Co-Inventor of the '385 Patent, if not the Sole Inventor.

The analysis in this case begins with the presumption that Smith is a co-inventor because he is so named in the '385 Patent. Further, the uncontroverted evidence shows that Smith contributed to the subject matter of at least one of the claims of the '385 patent. For simplicity sake on summary judgment, the Court need look no further than the "surface baffle" limitation in

the '385 Patent's claims. The '385 Patent discloses the use of a separate "surface baffle" that is near the surface of a well, relative to the triple-baffle system that is downhole. (*See*, *e.g.*, Figure 1, ref. # 44, Exhibit D.) The surface baffle limitation is specifically stated in claims 5, 12, 20, 21, 32, 37, 43, 52, and 59, and, as a matter of law, is incorporated into all claims depending therefrom.

Smith indisputably contributed to the surface baffle concept and design. Smith is a registered petroleum engineer, who has worked in the oil and gas business since 1986. (Smith Dep. at 6-7.) Since 1985, he has worked with perforated plates as a means of separating hydrocarbons and polymer solutions. (Smith Dep. at 91-101.) In particular, he worked directly with the technology described in U.S. Patent No. 4,402,916, which issued in 1983 and is owned by Marathon. ('916 Patent, Dep. Ex. 9, attached as Exhibit G.) Smith first came up with the idea to put a screen into the annulus of gas wells that was similar to the screen in the '916 patent used for different purposes. (Smith Dep. at 37-44, 91-101.) In fact, the surface baffle designed by Smith predated the triple-baffle configuration claimed in the '764 Patent. The purpose of the downhole, triple-baffle system was in direct response to the use of the surface baffle. (Smith Dep. at 37-38.) The surface baffle acts as a dehydration system to separate water from gas near the surface, in order to prevent water from entering the surface collection lines. (Exhibit D - '385 Patent, col. 7, ll. 7-20.) The separated water then falls downhole, toward the formation, where it captures gas on its way down and can cause additional problems for the submersible pump. The triple-baffle arrangement was designed in part to slow the fall of water by making it pass through a tortuous path. (Smith Dep. at 37-38.)

Preston has no evidence to refute that Smith was working on the surface baffle long before he started work for Marathon. When Preston filed the '764 Patent, he included absolutely no mention of a "surface baffle." By his own admission, the surface baffle was "unnecessary" to what he considered to be his invention. (Preston II Dep. at 95-97, 130.) Although he cannot produce a single drawing of his first alleged conception of the baffle system, according to Preston his earliest drawings have always included the triple-baffle arrangement claimed by the '764 Patent. (Smith Dep. at 25-28.)

Preston cannot overcome the presumption that Smith is a properly named inventor. In particular, Preston cannot prove that he had any connection to the surface baffle concept, much less that he invented the surface baffle to the exclusion of Smith. The surface baffle is expressly required by not one, but numerous claims in the '385 Patent. Thus, Smith's contribution to the '385 is not "insubstantial" as a matter of law. He is a properly named co-inventor, at least. Marathon is the assignee of Smith's interest in the '385 Patent. As a result, Defendants are entitled to partial summary judgment against Plaintiff on Count II (ownership of the '385 Patent) and on Count I (infringement of the '385 Patent).

## CONCLUSION

There are no genuine issues of material fact. The undisputed facts of this case demonstrate: 1) the '385 Patent was filed by Marathon and names Smith and Plaintiff as joint inventors; 2) Smith is an engineer employed by Marathon, who worked with Preston to design and install the baffle system in Marathon's wells; 3) Marathon is indisputably the assignee of Smith's interest in the '385 Patent; 4) among other matters, the '385 Patent includes claims

directed to a surface baffle, which was installed in the Marathon wells and is not disclosed, much less claimed, by Preston in the '764 Patent; 5) Smith indisputably contributed to the design and development of the surface baffle. Accordingly, Defendants respectfully ask the Court to grant summary judgment in their favor on Count II that Marathon is at least a co-owner of the '385 Patent, as assignee and on Count I's claim for infringement of the '385 Patent.

DATED October 12, 2009.

/s/ Mark Ruppert
Mark R. Ruppert, Wyo. Bar # 6-3593
Joanna R. Vilos, Wyo. Bar # 6-4006
Tyler J. Garrett, Wyo. Bar #  6-4400
HOLLAND & HART LLP
2515 Warren Avenue, Suite 450
P.O. Box 1347
Cheyenne, WY  82003-1347
Telephone:  (307) 778-4200
Facsimile:  (307) 778-8175
mruppert@hollandhart.com
jvilos@hollandhart.com
tjgarrett@hollandhart.com

Shane P. Coleman
HOLLAND & HART LLP
401 North 31st Street, Suite 1500
Billings, MT  59101
Telephone:  (406) 252-2166
Facsimile:  (406) 252-1669
spcoleman@hollandhart.com

ATTORNEYS FOR DEFENDANTS

## CERTIFICATE OF SERVICE

I hereby certify that on October 12, 2009, I served the foregoing by CM/ECF to the following:

>Philip A. Nicholas
>Nicholas@wyolegal.com
>
>Mitchell H. Edwards
>Edwardsm@wyolegal.com
>
>Robert J. Sanford
>rsanford@wyolegal.com

/s/ Mark Ruppert

4630978_2.DOC